441 A.2d 1189

Laura E. JARVIS, widow of Enos J. Jarvis, Appellant,

v.

WORKMEN'S COMPENSATION APPEAL BOARD

and

Elsie M. Jarvis, t/a John J. Jarvis

and

Phoenix Assurance Company of New York, Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 19, 1981.

Decided Dec. 17, 1981.

Rearguments Denied Feb. 26, 1982.

Joseph D. Shein, Philadelphia, for appellant.

David L. Pennington and Roger B. Wood, Philadelphia, for Phoenix Ins. Co.

Lowell A. Reed, Jr., Philadelphia, for Elsie M. Reed, Jr.

Before O'Brien, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Commonwealth Court[1] which affirmed the Workmen's Compensation Appeal Board's reversal of a referee's award of benefits to the appellant, Laura E. Jarvis. The award constituted compensation for the death of Enos J. Jarvis (hereinafter Jarvis), appellant's late husband, who was fatally injured on January 13, 1969, while working within the scope of his employment. Jarvis' employer, Elsie M. Jarvis t/a John J. Jarvis, had, for seven consecutive years preceding the occurrence of the fatal accident, procured Workmen's Compensation insurance from the appellee, Phoenix Assurance Company of New York, through the latter's agent, the Emil Schurgot Agency (hereinafter Schurgot). Each year, near the expiration date of the annual insurance policy, Schurgot billed the employer for the following year's premium, and payment ensued. The final policy so procured expired on January 9, 1969, just four days prior to Jarvis' fatal accident. No renewal premium notice had been sent to the employer, since Phoenix Assur-

---

1. *Jarvis v. Workmen's Compensation Appeal Board*, 40 Pa. Cmmw.Ct. 44, 396 A.2d 491 (1979).

ance had terminated Schurgot as its agent. Notice of the termination, however, was not supplied to the insured, nor was it transmitted to the Commonwealth's Insurance Department, until subsequent to Jarvis' death.

Phoenix Assurance refused compensation benefits on grounds that the employer's insurance coverage had lapsed. Appellant asserts, however, that the insurer breached a duty to notify the insured of its intention not to offer a policy renewal, an omission for which liability allegedly accrued to the insurance carrier for losses sustained after expiration of the policy.

In *Luther v. Coal Operators Casualty Co.*, 379 Pa. 113, 108 A.2d 691 (1954), this Court held that no such duty of notification rested upon the issuer of a Workmen's Compensation policy. The Court declined to hold that by reason of the insurer having renewed policies for successive years without request by the policyholder, an obligation arose to continue offering renewals from year to year indefinitely thereafter, or, if renewals were not to be offered, to inform the insured of the impending policy expiration and of the insurer's intention not to offer continued coverage:

> [W]here an insurance agent or broker promises, or gives some affirmative assurance, that he will procure or renew a policy of insurance under such circumstances as to lull the "insured" into the belief that such insurance has been effected, the law will impose upon the broker or agent the obligation to perform the duty which he has thus assumed. But here no such promise or assurance was given, nor was there any arrangement between the parties or any instruction given by plaintiff to keep up the insurance at all times or for any particular year . . .

> [I]n the absence of an allegation that defendants had promised or contracted to renew the insurance, or that plaintiff had requested that he be kept insured, defendants were under no duty, contractual or otherwise, either to effect a renewal or gratuitously to remind plaintiff that his then present insurance had expired.

379 Pa. at 116–118, 108 A.2d at 692, 693. As was the circumstance in *Luther*, the factual background of the present case contains no alleged affirmative assurances, promises, or statements, attributable to the carrier or its agent, that could have lulled the insured into believing that policies would be renewed indefinitely or that notice of non-renewal would be provided. Likewise, no request was made by the instant policyholder to maintain insurance coverage in effect from year to year, indefinitely.

Indeed, aside from the brevity of the time between the policy's lapse and Jarvis' death, i.e., four days, the present case is not to be distinguished from that of *Luther*, wherein a nine month period elapsed between the policy's expiration and the filing of a claim. Certainly, however, the duration of the lapse is not determinative of the insurer's liability. If a carrier does not inform a policyholder of the expiration of his insurance, and a lapse in coverage thereby results, the insurer's liability should not be dependent upon whether an arbitrarily demarcated time period has expired prior to the occurrence of an accident for which compensation is sought.

The rationale for the *Luther* decision was, in essence, that the responsibility for overseeing the continuity of an insured's coverage rested *solely* upon the policyholder, and that the insured had no legitimate expectation of assistance in this regard from the insurer. The Court stated:

[The plaintiff policyholder] must certainly have been aware of the fact that he had not received a new policy or any certificate of renewal of the old policy, or that he had paid any premium or been billed for one. . . The fact is that plaintiff was merely assuming that defendants would continue to look after him without his giving any further attention to the matter.

379 Pa. at 117, 108 A.2d at 693.

The stated rationale, although perhaps relevant to expectations arising from insurance contracts entered during the early 1950's, when the *Luther* case arose, at least today does not reflect the realities of insurance industry customs, and the concomitant expectations of parties to insurance con-

tracts. Common experience demonstrates that, in practice, routine billing procedures in the insurance field induce the belief that the insured is relieved of responsibility for monitoring the dates for policy expiration and premium payment. The insured has learned to rely wholly upon notices from insurance carriers and their agents for information as to impending expirations of policies and the need for action to maintain coverage. Indeed, this reliance has been encouraged by insurers and their agents, who, in the interest of retaining business, have almost invariably furnished such notices despite the absence of an express request therefor by the insured. The typical policyholder maintains no awareness of the date when his coverage expires, having been lulled into the belief that notice will be forthcoming as to the date when further action on his part is required. The insurance carrier, being responsible for instilling such reliance, cannot be permitted to silently ignore the harm that can result from failure to notify the insured of the termination of an agent, and the consequent non-renewal of coverage. Recognition of a carrier's duty to provide the expected notice is, therefore, necessary, and when a breach of that duty occurs, as in the present case, the carrier shall be estopped from asserting the expiration of the policy as a bar to recovery.[2] This Court's decision in *Luther* is, accordingly, overruled.

Order of Commonwealth Court reversed.

WILKINSON, J., did not participate in the consideration or decision of this case.

ROBERTS, J., files a dissenting opinion in which NIX, J., joins.

2. We find no merit in appellee's contention that the legislature has, merely by enacting a requirement that insurers provide notice of the non-renewal of automobile insurance policies (Act of June 5, 1968, P.L. 150, No. 78, § 5, 40 P.S. § 1008.5) while failing to address the matter of notice with regard to other types of insurance, demonstrated an intent that the instant notice requirement not be imposed.

ROBERTS, Justice, dissenting.

It is understandable that this employer could have expected the insurance company to renew its policy. And it is certainly unfair that appellant should be denied compensation for her husband's death because the employer failed to renew an insurance policy, and the estate of the employer (from which the widow could recover in an ordinary case) is insolvent. However, it is equally understandable that the insurance carrier could expect to rely on the settled law of this Commonwealth that its silence did not constitute an offer to renew an insurance policy. *Luther v. Coal Operators Casualty Co.*, 379 Pa. 113, 108 A.2d 691 (1954). See *Avondale Cut Rate, Inc. v. Associated Excess Underwriters, Inc.*, 406 Pa. 493, 178 A.2d 758 (1962). And it is equally unfair that this insurance carrier should now be told that its reliance on this basic principle of contract law was unjustified. Therefore, I dissent.

It may be that private insurance companies wishing to insure social insurance liabilities should have the duty to notify policyholders of the due date of premiums and of an intention not to renew. But this duty should be imposed by the Legislature, prospectively and with adequate notice, not by this Court retrospectively and by surprise.

The need for legislative, not judicial, action in this area is made clear by the questions left unanswered by the majority opinion, which imposes wide-ranging quasi-contractual responsibility upon an entire industry. For example, if an insurance carrier fails to send a notice of non-renewal after the expiration of a newly issued, one-time insurance policy, will it nonetheless be held liable for injuries which occur beyond the expiration date, or will liability attach only after the carrier or its agent has voluntarily sent renewal bills once, or twice, or three times? Does the liability created by the insurance carrier's silence extend only for a matter of days, as in this case, or for months, or even years?

That the Legislature has chosen not to adopt the rule set forth in the majority opinion is made clear by its recent enactments in the field of social insurance. In 1968, the

Legislature announced and implemented a policy with regard to automobile insurance carriers which stated that

"[n]o insurer shall cancel a policy except for one or the other of the following specified reasons:

(1) Nonpayment of premium; or

(2) The driver's license or motor vehicle registration of the named insured has been under suspension or revocation during the policy period . . . ."

Act of June 5, 1968, P.L. 150, No. 78 § 4, 40 P.S. § 1008.4. On the same day, in the next section of the Act, the Legislature announced a prospective rule for automobile insurers similar to the majority's judicially created, retrospective rule for workmen's compensation insurers:

"No cancellation or refusal to renew by an insurer of a policy of automobile insurance shall be effective unless the insurer shall deliver or mail to the named insured at the address shown in the policy a written notice of the cancellation or refusal to renew. Such notice shall: (1) Be approved as to form by the Insurance Commissioner prior to use; (2) State the date, not less than thirty days after the date of such mailing or delivering, on which such cancellation or refusal to renew shall become effective, . . .; (3) State the specific reason or reasons of the insurer for cancellation or refusal to renew . . .; (4) Advise the insured of his right to request in writing, within ten days of the receipt of the notice of cancellation or intention not to renew, or of the receipt of the reason or reasons for the cancellation or refusal to renew if they were not stated in the notice of cancellation or of intention not to renew, that the Insurance Commissioner review the action of the insurer; (5) Either in the notice or in an accompanying statement advise the insured of his possible eligibility for insurance through the automobile assigned risk plan."

Act of June 5, 1968, P.L. 150, No. 78 § 5, 40 P.S. § 1008.5, effective in 60 days.

In 1975, the Legislature announced and implemented a judgment with regard to cancellation of workmen's compen-

sation insurance similar to its earlier judgment regarding cancellation of automobile insurance:

> "Except for nonpayment of premiums, no policy of insurance issued or renewed against liability under . . . 'The Pennsylvania Workmen's Compensation Act,' . . . or under . . . 'The Pennsylvania Occupational Disease Act,' . . . may be cancelled or terminated by an insurer during the term of the policy."

Act of October 4, 1975, P.L. § 346, No. 100 § 1, 40 P.S. § 813. At that time the Legislature did not enact, and at no time since has it enacted, a requirement for notice of cancellation or non-renewal of workmen's compensation insurance policies. Perhaps the Legislature believes that, as opposed to individual drivers, employers who have voluntarily undertaken the many responsibilities of running a business are able to assume the responsibility of maintaining their insurance against employees' injuries.* Whatever the reason, and whatever the wisdom of that reason, the Legislature has clearly chosen to omit a notice requirement for non-renewal of workmen's compensation insurance policies from its comprehensive regulation of the insurance industry.

Quite recently this Court refused to create judicially a cause of action for bad faith conduct of insurance carriers. *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981). In so doing, we stated: "Surely it is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers." Id., 494 Pa. at 508, 431 A.2d at 970. Because the Legislature has chosen not to act in an area manifestly within its control, and because the majority's new rule contravenes a sound principle of contract law and unfairly imposes retrospective liability, I

---

* As Commissioner Reede of the Workmen's Compensation Board of Appeal observes in his opinion concurring in the denial of benefits to appellant, if this case had arisen in New York, appellant would have received compensation. There, the legislature has created a fund to provide compensation for claimants against insolvent employers who have failed to procure workmen's compensation insurance. N.Y. Workmen's Compensation Law (McKinney) § 26–a.

would affirm the unanimous decision of the Commonwealth Court.

NIX, J., joins in this dissenting opinion.

Mr. Chief Justice O'Brien dissents from the denial of reargument. Mr. Justice Roberts also dissents and would grant reargument for the reasons set forth in his dissenting opinion (joined by Nix, J.) filed in this matter.