## Riffe v. Allstate Insurance Co.

*P. Raymond Bartholomew*, for plaintiffs.
*John M. Silvestri*, for defendant.

ACKER, *J.*, May 13, 1983—This action is in assumpsit and declaratory judgment arising from defendant's refusal to defend and subsequently pay a verdict against Darlene Riffe in a trespass action against her arising in the Court of Common Pleas of Allegheny County. Defendant requested pursuant to Pa.R.C.P. 1038 specific findings of fact and conclusions of law with appropriate discussion. Because of the small amount in issue, the court was reluctant to grant the request but in that both counsel for plaintiffs and defendant have tried the case most vigorously and have submitted to the court extensive proposed findings of fact and briefs, the court has assented to the request. The court con-

cludes a verdict in favor of defendant, Allstate Insurance Company, and against plaintiffs, Carroll B. Riffe and Darlene Riffe, and will enter an appropriate order.

## FINDINGS OF FACT

1. Plaintiff, Carroll B. Riffe, is an individual residing at 2435 Carlisle Road, Transfer, Pa., and has resided at said address since 1954 and continuously, throughout all of the matters of concern before this court.

2. Plaintiff, Darlene Riffe Patterson, is a daughter of Carroll B. Riffe and at the time of this occurrence was the operator of a 1972 Nova automobile which was insured through the policy of her father, Carroll B. Riffe, with defendant Allstate Insurance Company.

3. Allstate Insurance Company is an automobile liability insurance carrier with a sales office located at the Sears Store in the Shenango Valley Mall, with a district claims office located in Mt. Lebanon, Pa., and with a regional claims office located in Valley Forge, Pa.

4. For in excess of 20 years, plaintiff Carroll B. Riffe was a named insured of Allstate Insurance Company as to automobile liability insurance for up to four vehicles through policy number 028536442.

5. Over the course of the relationship of the parties, Allstate Insurance Company had fixed a premium cycle based upon a six-month renewal period for paying premiums, which renewal dates on May 4 of one year to November 4 of the same year; and on November 4 of one year to May 4 of the next year.

6. On or about October 9, 1979, Allstate issued to Carroll B. Riffe as the named insured a declaration for a premium for a six-month renewal period beginning November 4, 1979, applicable to four vehi-

cles, one of which was a 1974 Chevrolet Impala listed as vehicle number two on said declaration and the vehicle involved in this case.

7. The language of the policy effective November 4, 1979, is as in plaintiff Exhibit 11.

8. During the course of the insuring relationship between plaintiff Carroll B. Riffe and defendant Allstate, there was established a course of conduct relative to the payment of premiums whereby defendant Allstate mailed to plaintiff Carroll B. Riffe premium notices which plaintiff Carroll B. Riffe paid at the Sears Store in the Shenango Valley Mall.

9. For the six-month renewal term effective November 4, 1979, Carroll B. Riffe had liability coverage on four different vehicles (including a 1974 Chevrolet Impala) under the policy issued by defendant Allstate Insurance Company.

10. Premium payments were made by Carroll B. Riffe either with cash or a check or a combination of the two by plaintiff at the Sears Store in the Shenango Valley Mall.

11. When the insurance policy came for renewal on either May 4 or November 4 of any year, including the renewal of November 4, 1979, Allstate permitted one of three methods for payment. The method chosen by plaintiff was four equal installments, the first of which was to be payable on the renewal date; the second, one month after the renewal date; and the third, two months after the renewal date; the fourth to be payable four months after the renewal date. The use of such a plan, however, required that a service charge be added by Allstate.

12. At the time of receiving a six-month premium renewal declaration, there was a perforation towards the bottom of the second page below which either the single payment or two payments or four

payment plan was offered. It was intended by Allstate that this be removed by the policy owner in making a premium remittance.

13. Within the Riffe family, upon the requirement to make a premium payment, the primary user of the vehicle would be responsible for the premium attributable to such vehicle. In addition, Carroll B. Riffe attempted to pay the premium on the last day that it was due.

14. On occasion, Carroll B. Riffe would be one or two months late in making payment after it was due, but that such payments were received by Allstate.

15. For the renewal of May 4, 1979, payment was not timely received and a cancellation notice was mailed by Allstate to Carroll B. Riffe dated May 15, 1979.

16. When a cancellation notice was mailed to Riffe, any organization having a loan encumbrance on the vehicle would receive a duplicate notice of cancellation. In this case, the lien holder was First National Bank.

17. When no payments were received for the May 4, 1979 renewal, on May 14, 1979 a notice of cancellation was produced by Allstate with a mailing date of May 15, 1979 for a cancellation date effective June 2, 1979, with a copy to First National Bank, Hermitage Square, Pa. A duplicate was sent to First National Bank of Greenville, Pa.

18. When the cancellation notice effective June 2, 1979 for the May 4, 1979 renewal was mailed to the two locations of First National Bank in Hermitage and Greenville, the mailing was noted on an attachment to an affidavit of mailing made in the regular course of business contemporaneous with said mailing identifying First National Bank, to-

gether with a notation of the insurance policy number.

19. Carroll B. Riffe has at all times relevant to this case denied receiving any cancellation notices from defendant except for a yellow notice, Plaintiff's Exhibit 14 of November 30, 1980.

20. When mail was received at the residence of Carroll B. Riffe, whoever was first home picked it up and directed it to the addressee. Allstate mail was addressed to Carroll B. Riffe because he was in charge of the insurance, although he would confer with his wife, Edna B. Riffe, concerning it.

21. The correct address of Carroll B. Riffe is accurately set forth in the various notices claimed to have been sent to Carroll B. Riffe.

22. Carroll B. Riffe had no recollection of receiving important mail or the notices from Allstate of October 1979.

23. The renewal premium of the Allstate policy for a six-month period as of November 29, 1979 was in the amount of $662. The first quarterly payment of $156.75 which was due November 4, 1979, reached defendant's Valley Forge Office on November 29, 1979, although it actually had been paid several days previously at the office of defendant at the Shenango Valley Mall.

24. By the four-payment plan used by Carroll B. Riffe the first equal installment was due on the date of the renewal of November 4, 1979, while the second payment was due on December 4, 1979. By making the first payment at the Sears Store several days prior to November 29, 1979, plaintiff had complied with the requirement of payment and the policy would not be in default as of November 30, 1979. Defendant's Exhibit B addressed to Carroll Riffe and First National Bank, showing a "mailing

date" of December 1, 1979, but which was actually mailed on December 3, 1979, shows a past-due payment of $156.75 and a notice that the insurance will stop on December 19, 1979 if not paid by that date.

25. The second quarterly payment was due on December 4, 1979. It was not made until after the accident on January 15, 1980. The notice which defendant sent to plaintiff and which plaintiff denied receiving, mailed November 20, 1979, claims an amount due of $312.25. As of that date, that amount was not in fact owing by application of the four-month payment plan. The $312.25 requested by this notice constituted one-half of the premiums plus a service charge. In fact one-half of the premium was owing on that date, for the first payment of $156.75 of defendant was not made until several days prior to November 29, 1980.

26. On December 1, 1979, Allstate mailed Exhibit B, being a notice of cancellation showing a correct amount past due of $156.75. This notice informed the recipient that the policy would no longer be in force on December 19, 1979.

27. The notice of cancellation of Allstate of November 30, 1979 mailed on December 3, 1979 effective December 19, 1979 was designed to inform plaintiff that the second quarterly payment for the November 4, 1979, renewal was due December 4, 1979. This was so in that the first quarterly payment had been received on November 29, 1979.

28. It was the desire of Allstate to cancel the policy as of December 19, 1979.

29. On January 13, 1980, Darlene Riffe Patterson, the daughter of Carroll B. Riffe, was operating the 1974 Chevrolet Impala previously mentioned on Garden City Drive in Monroeville, Allegheny County, Pa., when she became involved in an au-

tomobile accident with a motor vehicle operated by Bernard Vorek.

30. The accident was promptly reported to defendant whereupon Mr. Riffe was informed that his liability insurance carrier was refusing coverage due to a lapsed status.

31. Two days later on January 15, 1980, plaintiff Riffe appeared at the office of the local agent, James McDonel of Allstate and tendered $313.50 which Allstate accepted. Mr. McDonel informed Mr. Riffe at that time that his liability policy was being reinstated.

32. Plaintiff Riffe did receive a cancellation notice from defendant in November or December of 1979 and did know the policy had lapsed on December 19, 1979, prior to his reporting his daughter's accident on January 13, 1980.

33. On or about March 26, 1981, Vorek filed a trespass complaint against Darlene Riffe in the Court of Common Pleas of Allegheny County at no. 2703-81. The complaint was forwarded by Darlene Riffe's representative to defendant promptly after service was made upon Darlene Riffe and demand was made upon defendant to provide a defense.

34. Defendant refused to provide a defense for the Allegheny County trespass action. Plaintiff, at her own expense, engaged attorney Peter Y. Herchenroether to represent her. Darlene Riffe was charged by Attorney Herchenroether $304.50 for the preparation of pleadings, interview of witnesses and attendance at the arbitration hearing. This court concludes this was fair and reasonable.

35. The arbitration hearing was held on May 13, 1981, at which time Darlene Riffe appeared and testified that Vorek was traveling at a high rate of speed and attempted to pass her on her right. Despite this evidence, the Board of Arbitration entered

an award in favor of Bernard Vorek in the amount of $938.26.

36. The attorney for Darlene Riffe had notified Allstate Insurance Company of the existence of a claim and requested an appearance and representation, all of which was denied.

37. Upon receipt of the arbitration award, plaintiff made prompt demand upon defendant to pay the same together with counsel fees or take an appeal. Defendant did nothing, with the result that Darlene Riffe Patterson now faces not only a judgment but also the suspension of her operating privileges.

Upon these facts, this matter must be decided.

## DISCUSSION

This case must be decided on whether there was a legally effective cancellation of plaintiff's policy of insurance.

In order for a cancellation of a policy of automobile insurance to become effective, it is necessary that the insurer deliver or mail to the named insured, at the address shown on the policy, a written notice of cancellation or a refusal to renew. Act of 1978, October 5, P.L. 1060, 40 P.S. §1008.5. A form notice must be in accordance with that approved by the Insurance Commissioner. This is dealt with in Title 31, Pa. Code Insurance §61.5. The form notice, Exhibit 14 in this case, is in compliance with the statute and the regulations. The statute requires that the insurer must give not less than 30 days notice of cancellation after the date of mailing or delivery, except if the notice is for nonpayment of premiums or suspension of driving privileges as is provided in 40 P.S. §1008.4(1) and (z).

It is to be noted that it is not necessary that de-

fendant actually receive the notice if it was mailed or delivered to the insured. By the Allstate Policy, Plaintiff's Exhibit 11, it is provided that "Allstate may cancel part or all of this policy by *mailing* notice to you at your last known address. We will give you 15 days notice if we cancel because you didn't pay the premium." (Emphasis added.) This is in accordance with the statute and the Insurance Commissioner's regulations, supra.

Plaintiff contends that under the language of the policy which provides, "If we cancel for another reason [other than the failure to pay the premium], within the first 59 days of the premium period, the date of cancellation will be at least 10 days after the date of mailing. Otherwise, we'll give you 30 days notice." The insurance company had a requirement to give 30 days notice for cancellation based on non-payment of premiums. It is then argued that because the cancellation notice, dated November 30, 1979, was not in compliance with the terms and conditions of the insurance policy, the notice had no legal effect. For the insured to be correct the policy must be interpreted that the 15 days notice of cancellation for payment of premium must not be within the first 59 days of the premium period, or if it is within that period, in the event of non-payment, the insured must be given 30 days notice. The premium period under the plan chosen by the insured was to make payments in four monthly installments after the renewal date. Therefore, there could not be 59 days of the premium period, for such would be 29 days over the premium period. Wherefore, we refuse to accept this contention of plaintiff.

The argument that the notice of November 30, 1979, did not state the date when the amount was allegedly past due, the place or agent to whom the amount was to be paid or the heading as required by

Appendix A of Title 31, Pennsylvania Code Insurance are all without merit. By 31 Pa. Code §61.5 of the insurance regulations, the insurance company can utilize either of two options. It can follow the form providing the specific reasons for cancellation in the notice. This plan was followed. The cancellation notice, plaintiff's Exhibit 14, mailed November 12, 1979, notifies defendant that the policy is cancelled for non-payment of premium. Similarly, the notice of December 1, 1979, defendant's Exhibit B, and the notice mailed November 20, 1979, defendant's Exhibit J, show notice given because of non-payment of premium. Utilizing the first option, it is not required that Allstate give the information plaintiff contends is required.

It is also contended by plaintiff that there was insufficient competent evidence to show proper mailing of notice of cancellation. We have, however, reviewed the facts in the light of Campbell v. Royal Indemnity Company of New York, 256 Pa. Super. 312, 389 A. 2d 1139 (1978) and conclude there was sufficient competent evidence to show mailing. This conclusion is not affected by reference to footnote 12, at page 1144 of Campbell concerning evidence of a postal stamp. We do not believe that it is a prerequisite to showing proper mailing that there was in fact a postal stamp on each notice in view of the modern day methods of mailing nor do we accept that Campbell so holds.

In an action for a declaratory judgment by an insured that an automobile policy was in force on the day of the accident, the burden of proof is upon the insurance company to show, as a part of its defense, that it had complied with every term of the policy relating to cancellation. Hanna v. Reliance Insurance Company, 402 Pa. 205, 166 A. 2d 877 (1961). Further, the provisions of an insurance

policy as to cancellation must be strictly followed. Letvin v. The Phoenix Insurance Company of Hartford, 91 Pa. Super. 422 (1926); Martha Company v. Nationwide Mutual Insurance Company, 473 F. Supp. 1029 (M.D. Pa. 1979).

It is conceded by plaintiff, Carroll B. Riffe that a second quarterly payment due December 4, 1979, was not made on that date, and in fact, was not made until two days after the date of the accident, January 13, 1980.

Defendant, by Proposed Finding of Fact 8, confirms to some degree, the practice of plaintiff, Carroll B. Riffe concerning the late payment of premiums. By it, Allstate would mail to plaintiff, Carroll B. Riffe, premium notices which plaintiff would then pay at Sears in the Shenango Valley Mall. The history of such payments shows frequent late payments.

Jarvis v. Workmen's Compensation Appeal Board, 497 Pa. 379, 441 A. 2d 1189 (1981), at page 1191, states, "Common experience demonstrates that, in practice, routine billing procedures in the insurance field induce the belief that the insured is relieved of responsibility for monitoring the dates for policy expiration and premium payments. The insured has learned to rely wholly upon notices from insurance carriers and their agents for information as to impending expirations of policies and the need for action to maintain coverage. . . . Recognition of a carrier's duty to provide the expected notice is, therefore, necessary, and when a breach of that duty occurs, as in the present case, the carrier shall be estopped from asserting the expiration of the policy as a bar to recovery."

Considering all of the above, however, it is most apparent that plaintiff failed to make the first initial payment due on November 4, 1979, until

November 29, 1979. At the extreme, the policy would not be in default until November 30, 1979. In fact, the second due date was December 4, 1979. At best, for plaintiff, there is an error in the accounting system because of his payment just prior to the notice of December 4, 1979, which was generated prior to that date and, therefore failed to account for the late payment of November 29.

It is true that two days after the accident, the insurance company's agency received all of the back premiums, but that occurred beyond the grace period.

We believe this case is controlled by the principles set forth in Schifalacqua v. CNA Insurance, 567 F. 2d 1255 (3d Cir. 1977), where is was held that payments after the end of the grace period for premiums previously owing does not allow for recovery for a loss sustained during the continuation of such default. The doctrine of implied waiver in Pennsylvania is applicable only to situations involving circumstances equivalent to an estoppel and the person claiming the waiver to prevail must show that he was misled and prejudiced thereby. There was no evidence that this plaintiff was misled or prejudiced. However, the court further holds that during the interval between the lapse and the tender of the late payment, the insured can in no way rely on the company's subsequent acceptance of its payment.

An even closer case on its facts is Panizzi v. State Farm Mutual Automobile Insurance Company, 386 F. 2d 600 (3d Cir. 1967), cert. denied 392 U.S. 937 (1968). There, the action was upon an automobile insurance policy for failure to properly investigate and settle an accident claim against the insured. The policy required a 5-day notice of cancellation. When half of the premium had been paid after the insured threatened cancellation, it was held that

the policy was not in force on the date of the accident which occurred four days after the cancellation date. Further, that when the insured paid part, but not all, of the premium, the automobile liability insurer had the power to refuse coverage until payment in full of the premium. Under Pennsylvania law, an insurer is not required to accept a lesser sum than the amount of the premium due. The insurer's acceptance of some amount, but less than the premium which is delinquent will not of itself operate as a waiver to the company's right to forfeit for lapse of premium.

Hence, it is the conclusion of this court that there was no coverage on January 13, 1980, the date of the accident.

Hence, this

## VERDICT

And now, May 13, 1983, this court finds a verdict in favor of Allstate Insurance Company, defendant, and against Carroll B. Riffe and Darlene Riffe, plaintiffs, in the action in assumpsit.

In the action of declaratory judgment, this court concludes that the policy of Allstate Insurance Company involved in this case was not in force and effect on January 13, 1980, and that there was no insurance coverage for the vehicle owned by Carroll B. Riffe and operated by Darlene Riffe with Allstate Insurance Company on that date.

Within ten days after the notice of the filing of the decision, exceptions may be filed by any party to the decisions or any part thereof, to rulings on objections to evidence or to other matters occurring during the trial. Each exception shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived unless, prior to final judgment, leave is

granted to file exceptions raising these matters. No motion for a new trial, for judgment n.o.v., in arrest of judgment or to remove a non-suit may be filed.

The prothonotary, on praecipe, shall enter final judgment on the decision if no exceptions have been filed within the ten day period or if a waiver in writing of the right to file exceptions signed by all parties has been filed.

The prothonotary shall immediately give written notice by ordinary mail to each party who has appeared in the action or his attorney of record of entry of a final judgment or any other order of the court.