IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dalton's Towing & Recovery, LLC,       :
                                       :
                    Petitioner         :
                                       :
          v.                           :   No. 647 C.D. 2020
                                       :   No. 648 C.D. 2020
                                       :   Submitted:  February 5, 2021
Workers' Compensation Appeal           :
Board (King, State Workers'            :
Insurance Fund, Uninsured              :
Employers Guaranty Fund, and           :
Pinnaclepoint Insurance Company        :
c/o Brickstreet Insurance),            :
                                       :
                    Respondents        :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  December 3, 2021


          In these consolidated appeals, Dalton's Towing & Recovery, LLC
(Employer) petitions for review of the order of the Workers' Compensation Appeal
Board (Board) affirming the decision of a workers' compensation judge (WCJ),
which granted the Claim Petition of Raymond King (Claimant) seeking
compensation benefits under the Workers' Compensation Act (Act)[1] against
Employer and Pinnaclepoint Insurance Company c/o Brickstreet Insurance

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1 - 1041.4, 2501-2710.

(Insurer); granted the Claim Petition for compensation benefits filed by Claimant against the Uninsured Employers Guaranty Fund (UEGF); and denied Employer's Petition to Review Compensation Benefits (Review Petition) that alleged, *inter alia*, that Insurer improperly cancelled Employer's workers' compensation insurance policy (Policy) prior to Claimant's work-related injury. We affirm.

It is undisputed that, on March 30, 2018, Claimant was employed as a tow truck driver by Employer, and was involved in a work-related motor vehicle accident in which he sustained the following injuries: (1) acute kidney injury; (2) liver shock; (3) a right anterior cruciate ligament (ACL) tear; (4) closed bilateral acetabular fractures; (5) a degloving injury to the right lower leg; (6) traumatic amputation of the left leg above the knee; (7) multiple open pelvic fractures; and (8) a non-displaced commuted fracture of the shaft of the right fibula. Employer was notified of the work-related injuries on the date of injury. Employer filed an Answer to the Claim Petition, admitting that Claimant was involved in the accident during his employment, suffered disabling injuries therefrom, and gave timely notice of the accident and his injuries. However, Employer asserted that it had workers' compensation insurance at the time of the accident and that Insurer improperly denied coverage under the Policy.

On April 20, 2018, Employer filed the Review Petition, alleging that Insurer had improperly cancelled the Policy. Insurer filed an Answer to the Review Petition denying the material allegations raised therein and alleging, *inter alia*, that there was no improper denial of coverage, and the Policy cancellation was done in accordance with Pennsylvania law based on Employer's nonpayment of premiums.

On June 15, 2018, Claimant filed another Claim Petition for compensation benefits against UEGF (UEGF Petition) based on his work-related

injuries. UEGF filed an Answer to the UEGF Petition denying all of the material allegations raised therein.

Hearings ensued before the WCJ in which Claimant testified in support of the Claim Petitions, and presented the testimony of Cindy Landis, Employer's owner; Libby Fleischer, a senior claims adjuster for Insurer; and Toney Stroudt, Insurer's in-house counsel, in support of the position that Employer was insured by Insurer at the time of the accident through the Policy. Insurer presented the deposition testimony of Mandy Maher, a client service agent for McConkey & Co. (Broker), an insurance broker; Tod Bergen, a producer for Broker, who solicits businesses and procures insurance for them; and Joanne Rao, the Philadelphia branch manager for IPFS Corporation (IPFS), in support of the position that Employer's Policy was properly cancelled prior to the time of the accident. On April 1, 2019, the WCJ issued a decision disposing of the petitions in which he made the following relevant findings of fact and conclusions of law.

Employer and Insurer executed a Premium Finance Agreement (Agreement)[2] to finance Employer's premiums for the Policy to Insurer through a

---

[2] Section 2 of the Insurance Premium Finance Company Act (Premium Finance Act), Act of December 19, 1984, P.L. 1182, 40 P.S. §3302, defines "[i]nsurance premium finance agreement," in pertinent part, as follows:

> An agreement by which an insured or prospective insured promises to pay to an insurance premium finance company the amount advanced or to be advanced under the agreement to an insurer . . . in payment of premiums and related loss prevention services of an insurance contract together with interest and a service charge as authorized and limited by this act.

In turn, Section 2 defines "[i]nsurance premium finance company" as "[a] person engaged in the business of entering into insurance premium finance agreements." *Id.*

3

Premium Finance Company, in this case, IPFS.  Reproduced Record (R.R.) at 26a.
As noted by the WCJ in his decision, the provisions of the Agreement

> specifically address[] the issues that directly impact the dispute in this matter, including [(1)] whether IPFS had the authority to act on behalf of Employer in the event of [a] default of payment; [(2)] what constitutes a default; [(3)] notices required if IPFS sought to cancel the [Policy] on behalf Employer after default; and [(4)] the impact, if any, when payments were received after a cancellation.

*Id.*

The WCJ found as fact that Employer granted IPFS a full power of attorney under the express terms of the Agreement:

> POWER OF ATTORNEY:  [Employer] irrevocably appoints [IPFS its] attorney-in-fact with full power of substitution and full authority upon default to cancel [the Policy] above identified, receive all sums assigned to [IPFS] or in which it has granted [IPFS] a security interest and to execute and deliver on behalf of [Employer] documents, instruments, forms and notices relating to the [Policy] in furtherance of this Agreement.

R.R. at 26a.

The WCJ also found as fact that the Agreement defined "default" as follows:

> DEFAULT AND DELINQUENT PAYMENTS:  If any of the following happens [Employer] will be in default:  (a) a payment is not made when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against [Employer], or (c) [Employer] fails to keep any promise [that Employer] makes in this agreement; provided, however, that to the extent required by applicable law, [Employer] may be held to be in default only upon the occurrence of an event described in clause (a) above.

R.R. at 26a.

Additionally, the WCJ found as fact that the Agreement permitted IPFS to cancel the Insurance Policy stating, in relevant part:

> CANCELLATION: [IPFS] may cancel the [Policy] after providing at least 18 days' notice of its intent to cancel or any other required statutory notice[3] if [Employer] does

---

[3] With respect to the cancellation of the Policy, Section 10 of the Premium Finance Act states:

> **(a) Procedure.** When an insurance premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be canceled by the insurance premium finance company unless the cancellation is effectuated in accordance with this section.
>
> **(b) Written notice.** Not less than 15 days' written notice shall be mailed to the insured, at his last known address as shown on the records of the insurance premium finance company, of the intent of the insurance premium finance company to cancel the insurance contract or contracts unless the default is cured within such 15-day period.
>
> **(c) Curing default.** In the event that after giving the prescribed notice, the default is not cured within the 15-day period, the insurance premium finance company may cancel the insurance contract or contracts by mailing a notice of cancellation to the insurer. The insurance contract shall be canceled as if the notice of cancellation had been submitted by the insured himself but without requiring the return of the insurance contract. The insurance premium finance company shall also mail a notice of cancellation to the insured at his last known address as shown on the records of the insurance premium finance company.
>
> **(d) Statutory, regulatory and contractual restrictions.** . . . The insurer shall determine the effective date of cancellation taking into consideration the number of days' notice required to complete the cancellation. The insurer shall not be required to send the insured any notice of cancellation when the insurance policy is canceled by

**(Footnote continued on next page…)**

not pay any installment according to the terms of this [A]greement . . . and the unpaid balance due [IPFS] shall be immediately due and payable by [Employer]. [IPFS] at its option may enforce payment of this debt without recourse of security given to [IPFS].

R.R. at 26a-27a.

The WCJ further found as fact that the Agreement addressed the disposition of premium payments that Employer submitted to IPFS after cancellation of the Policy:

> MONEY RECEIVED AFTER CANCELLATION: Any payments to [IPFS] after [IPFS's] Notice of Cancellation of the [Policy] has been mailed may be credited to the insurance account without any obligation on the part of [IPFS] to request reinstatement of [the Policy]. Any money [IPFS] receives from [Insurer] shall be credited to the balance due [IPFS] with any surplus refunded to whomever is entitled to the money. In the event that [IPFS] does request a reinstatement of the [Policy] on behalf of [Employer], such request does not guarantee the coverage under the [Policy] will be reinstated or continued. Only [Insurer] has the authority to reinstate the [Policy]. [Employer] agrees that [IPFS] has no liability to [Employer] if the [Policy] is not reinstated and [IPFS] may charge a reinstatement fee where permitted up to the maximum allowed amount allowed by law.

R.R. at 27a.

The Agreement was executed on October 5, 2017, with the first payment due on October 18, 2017. R.R. at 28a. "Right out of the box, Employer failed to make this monthly payment; thus IPFS sent a Notice of Intent to Cancel

---

an insurance premium finance company pursuant to the terms of this section.

40 P.S. §3310.

dated October 23, 201[7]." *Id.* Employer did not remit the October payment until November 10, 2017. *Id.*

Subsequently, based on a number of prior missed payments, on February 23, 2018, IPFS sent Employer a Notice of Intent to Cancel based on Employer's failure to remit a $30,153.50 payment that was due on February 18, 2018. R.R. at 27a. The Notice also listed a late payment fee of $1,507.68. *Id.* The WCJ found as fact:

> The IPFS transaction history, which shows the payments received from Employer, has no payment being received by IPFS between February 23, 2018, and April 1, 2018. There is nothing in the bank records of Employer from the month of March 2018, that would indicate [that] Employer made a payment of $30,153.50 together with the late payment added. The Notice of Payment Due issued by IPFS on March 5, 2018, reflected this past due amount, *i.e.*, $30,153.50, as well as the March payment together with the late payment charge for a total of $63,322.36, which total amount was to be paid by March 18, 2018. There is no indication that Employer made this payment during the month of March. It is clear to this [WCJ] and this [WCJ] finds as fact, that Employer still remained in default of the February 2018 payment that was referenced on the Notice of Intent to Cancel dated February 23, 2018, throughout March 2018.

*Id.* (citations omitted).

On March 14, 2018, IPFS sent Employer, Broker, and Insurer a Notice of Cancellation setting a cancellation date of March 17, 2018. R.R. at 30a. "Employer offered no credible evidence that it had made any payments to IPFS between February 23, 2018, and March 14, 2018, or even responded to the Notice of Intent to Cancel or the Notice of Cancellation in any fashion whatsoever prior to the accident and injury" on March 30, 2018. *Id.* Ultimately, the WCJ found as fact:

7

[IPFS's branch manager] credibly testified that on February 23, 2018, a Notice of Intent to Cancel was mailed to Employer telling Employer that the [P]olicy would be cancelled if premiums were not pa[i]d. At that point in time, Employer was still one full payment of $30,153.50 plus a late fee of $1,507.68 in arrears. The past due date on this amount was February 18, 2018. There was no evidence presented by Employer that this was factually incorrect or that [it] made any effort to bring the account current from the date of this notice to the date of the accident at issue in this dispute. This [WCJ] accepts as fact, from the testimony of [the branch manager] and the supporting documents, that IPFS sent a Notice of Cancellation to Employer, [Insurer] and [Broker] on March 14, 2018, setting a cancellation date of March 17, 2018. This fact has been consistently testified to by numerous witnesses. Again, Employer offered no credible evidence that it had made any payments to IPFS between February 23, 2018, and March 14, 2018, or even responded to the Notice of Intent to Cancel or the Notice of Cancellation in any fashion whatsoever prior to the accident and injury that is presented in this dispute.

*Id.* *See also id.* at 89a-90a ("Although the WCJ erroneously determined the cancellation date to be the date requested by IPFS-March 17, 2018-rather than that chosen by [Insurer], pursuant to [Section 10(d) of the Premium Finance Act]-March 28, 2018, the policy was still cancelled prior to Claimant sustaining his work injuries.").

On March 31, 2018, at 10:18 a.m. central time, the day following the accident, Employer submitted a payment of $61,819.68 to IPFS via a telephone payment system. R.R. at 24a. The payment was not posted until the following business day, April 2, 2018, because it was made over the weekend. *Id.* On April 2, 2018, IPFS generated a Notice of Request for Reinstatement to Employer, Broker, and Insurer because the payment had been applied to the account and the Policy was in cancelled status at that time. *Id.*

8

Based on the foregoing findings, the WCJ concluded, in relevant part:

5.    This [WCJ] concludes as a matter of law that although Employer is primarily liable under the Act for the injuries sustained by Claimant on March 30, 2018, [Insurer] is not liable as this entity did not provide workers' compensation coverage for Employer [on] that date. The [WCJ] has found that the credible evidence presented established that Employer had entered into [the Agreement] with IPFS for the purpose of securing various insurance coverage[s], including workers' compensation insurance. The [Agreement] contained a Power of Attorney irrevocably appointing IPFS as [attorney-in-fact] for Employer with full power of substitution and full authority upon default to cancel all policies[.] Such agreements in Pennsylvania are governed by the [Premium Finance Act]. The Notice of Intent to Cancel not only met the time requirement set forth in the [Premium Finance Act], but it also met the longer notice period set forth in the [Agreement]. This [WCJ] has found that Employer was in default of its payments when the February 23, 2018 Notice of Intent to Cancel was issued and that Employer took no steps to remedy this default during the "cure period" set forth in the [Premium Finance Act], before the Notice of Cancellation was issued or before the accident and injuries occurred in this dispute. Based upon the credible evidence presented in this dispute, this [WCJ] has found that the [Insurer's P]olicy was cancelled before the accident and injury occurred and that it was only after cancellation of the [P]olicy and after the accident and injuries were sustained did Employer make a payment to IPFS. The [Agreement] addresses "Money Received After Cancellation," and although IPFS may request reinstatement of the [P]olicy at that time on behalf of the insured, the language in the [A]greement expressly states that there was no guarantee that a cancelled policy would be reinstated. In the instant case, [Insurer] decided not to reinstate, a decision that was made prior to the occurrence of the accident/injures sustained by Claimant.

6.    The Act provides for the establishment of the [UEGF], which purpose of such fund is to pay to any

9

[c]laimant or his dependents workers' compensation benefits due and payable under the Act[,] and any costs specifically associated therewith where the employer liable for the payments failed to insure or self-insure its workers' compensation liability . . . .

7. Given the finding that Employer did not have workers' compensation coverage on the date of the accident/injuries, *i.e.*, that the [P]olicy had been cancelled before March 30, 2018, the [UEGF] is secondarily liable for the payment of benefits in accordance with the Act.

R.R. at 31a-32a.

Accordingly, the WCJ issued an order granting Claimant's Claim and UEGF Petitions, finding Employer primarily liable and UEGF secondarily liable for Claimant's work-related injuries, and denying Employer's Review Petition. R.R. at 33a. Employer and UEGF appealed the WCJ's decision to the Board, which consolidated the appeals and affirmed the WCJ's order. *See id.* at 71a-96a. Employer then filed the instant petitions for review.[4]

On appeal,[5] Employer claims that the Board erred in affirming the WCJ's order because: (1) the Policy was improperly cancelled because IPFS failed to provide proper notice to make payment on the Policy as required by the Premium Finance Act; and (2) Insurer improperly cancelled the Policy because Employer

---

[4] By July 30, 2020 order, this Court consolidated Employer's petitions for review of the Board's order because they presented similar issues.

[5] Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1318 n.4 (Pa. Cmwlth. 1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992).

justifiably relied on Insurer's misrepresentations to its detriment so the Policy was in full force and effect at the time of Claimant's work-related accident.

Employer first claims that the Board erred in affirming the WCJ's order because the Policy was improperly cancelled by IPFS. Specifically, Employer contends that IPFS properly sent a notice on February 5, 2018, for Employer to make a payment that was due on February 18, 2018, but then sent the Notice of Intent to Cancel on February 23, 2018, based on a payment that was not due until March 18, 2018, and after Employer had remitted a partial payment of the amount due on February 18, 2018.

In support, Employer relies on *Jarvis v. Workmen's Compensation Appeal Board (Phoenix Assurance Company of New York)*, 441 A.2d 1189, 1190 (Pa. 1982), in which the Pennsylvania Supreme Court held that a workers' compensation insurer that breached its duty to provide an annual renewal premium notice to the insured employer was estopped from asserting the expiration of the policy as a bar to a widow's recovery for the death of her employee-husband. However, as the Board correctly explained, in this case,

> [Employer] remained in arrears at the time that [Insurer] sent out the [Notice of Cancellation] even though [Employer] had completed six payments. Therefore, before [Employer's] March 18, 2018 payment date, [Employer] was in arrears and [Insurer] was notified of the cancellation. Furthermore, [Employer] received notifications of the cancellation by IPFS, and [Employer] was aware that [it was] in arrears and that coverage was cancelled. This is not akin to *Jarvis*, where the defendant had paid an entire year of payments and was simply never notified that its coverage had lapsed at the completion of a year and required renewing. *Jarvis*. The defendant in *Jarvis* was unaware of its lack of coverage when its worker was injured, due to the insurer's failure to send a renewal notice out. *Id.* Therefore, the insurer in *Jarvis* was held

11

responsible for [the] failure of notification because the defendant relied to its detriment on the insurer's typical renewal notices. *Id.* In the present matter, [Employer] had been making payments sporadically and had consistently received notifications for payment. The only notification [that Employer] did not receive was for a [sixth] payment, which [Employer] had chosen to modify in February 2018 for a split payment. Therefore, [Employer] was well aware of the modification to the payment schedule that it made. Rather, IPFS religiously sent out these notices and also sent out a Notice of Cancellation. Due to these various differences, we cannot say that *Jarvis* is applicable in the current matter and requires [Insurer] to be liable for the [P]olicy that had already been cancelled. Moreover, due to IPFS's consistent notifications of both payments due and cancellation, we cannot say that the remedy in *Jarvis* is applicable to this case.

R.R. at 91a.[6]

Indeed, as outlined above, the WCJ found as fact that "on February 5, 2018, IPFS sent a Notice of Payment due where the total amount payable at that time was $63,322.36"; that "Employer only made approximately half of that payment during the month of February . . . still leaving an arrearage and the payments in default" at the time that the Notice of Intent to Cancel was issued on February 23, 2018;[7] that "[a]t that point in time, Employer was still one full payment of

---

[6] Employer's reliance on *Pennsylvania National Mutual Casualty Insurance Company v. Powers Trucking Company*, 2 Pa. D. & C. 4th 57 (1989), is likewise misplaced. That declaratory judgment action involved the retroactive recission of a workers' compensation policy under Section 653 of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. §813, based on a purported misrepresentation made in obtaining the policy's retroactive reinstatement. However, as the Clinton County Common Pleas Court noted, "the clear provisions of [S]ection [653] . . . limit such a cancellation to the circumstance of nonpayment of premiums," 2 Pa. D. & C. 4th at 63, such as the cancellation of Employer's policy in the instant matter based on the nonpayment of premiums.

[7] *See* R.R. at 23a n.5 ("When reviewing . . . the Transactional History, it appears that Employer had made a payment on February 9, 2018, in the amount of $26,153.50 and then made **(Footnote continued on next page…)**

12

$30,153.50 plus a late fee of $1,507.68 in arrears [so t]he past due date on this amount was February 18, 2018;" and that "[t]here was no evidence presented by Employer that this was factually incorrect or that [it] made any effort to bring the account current from the date of this notice to the date of the accident[.]" R.R. at 30a. Moreover, the WCJ's findings of fact outlined herein clearly demonstrate that IPFS complied with the notice requirements of both Section 10 of the Premium Finance Act and the Agreement prior to cancelling Employer's policy. *See id.* As a result, Employer's reliance on *Jarvis* is misplaced and the Board did not err in affirming the WCJ's decision in this regard.

Finally, with respect to Employer's assertion of equitable estoppel, Employer asserts that "IPFS sent several notices with conflicting cancellation dates, and the later cancellation dates were relied upon by [Employer] to its detriment," and that "[Employer] made a partial payment on February 12, 2018, and reasonably believed that this payment would stave off cancellation of the Policy, as late payments had in the past." Amended Brief of Petitioner at 24.

As this Court has observed:

> The doctrine of equitable estoppel applies in situations where a party, through its acts, negligently misrepresents material facts while knowing or having reason to know that the party will justifiably rely on the misrepresentation to its detriment and indeed the other party does so rely. The two essential elements of equitable estoppel which a claimant must prove by clear and convincing evidence, are, first, inducement and, second, the justifiable reliance on the inducement.

the $4,000.00 payment on February 12, 2018, for a total between those two payments of $30,153.50.").

13

*Sharon Steel Corporation v. Workmen's Compensation Appeal Board (Myers)*, 670 A.2d 1194, 1199 (Pa. Cmwlth. 1996) (citations and footnotes omitted).[8]  Moreover, "payment of a legally binding debt does not constitute a detriment."  *Walker v. Workmen's Compensation Appeal Board (Sherbren Manufacturing)*, 656 A.2d 164, 171 (Pa. Cmwlth. 1995).

However, in this case, the WCJ found as fact:[9]

This [WCJ] also note[s] that there was testimony from [Insurer's senior claims adjuster] concerning a conversation [that] she had with [Employer's owner] on April 4, 2018, with [Insurer's adjuster] testifying that when she raised the issue of a coverage problem or policy cancellation, [Employer's owner] told her that she was unaware of this.  Notwithstanding, it is clear to this [WCJ] that [Employer's owner] did in fact have this knowledge and was clearly aware of issues with the coverage and the cancellation when she talked with [Insurer's adjuster] on April 4, 2018.  This is evidenced by the March 15, 2018 e-mail [that] she received from [Broker's client service agent] and the April 2, 2018 e-mail [that] she had received

---

[8] "Clear and convincing evidence is evidence that is so clear and direct as to permit the trier of fact to reach a clear conviction, without hesitancy, as to the truth of the facts at issue." *Sharon Steel Corporation*, 670 A.2d at 1199 n.18.

[9] This Court has stated:

[I]t is well settled that, in a workers' compensation proceeding, the WCJ is the ultimate finder of fact.  As the fact finder, the WCJ is entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part.  Questions of credibility and the resolution of conflicting testimony are within the exclusive province of the fact finder.  Thus, determinations as to witness credibility and evidentiary weight are within the exclusive province of the WCJ and are not subject to appellate review.

*Washington v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 11 A.3d 48, 57 n.6 (Pa. Cmwlth. 2011) (citations omitted).

14

from [Broker's producer]. The first e-mail indicated that the [P]olicy was to be cancelled effective March 17, 2018, due to nonpayment and the second e-mail noted that there was a problem with workers' compensation and that the [P]olicy had been cancelled effective March 28, 2018. Given the foregoing factors, this [WCJ] simply does not find [Employer's owner] credible in this dispute and rejects her testimony where it conflicts with that of [IPFS's branch manager], [Broker's producer], [Insurer's adjuster], or [Broker's client service agent].[7]

\* \* \*

[7]To the extent that [Employer's owner] has argued that she was somehow confused by the various notices that she received, this [WCJ] simply does not find that assertion to be credible. There was no evidence whatsoever that Employer took any action on the February 23, 2018 Notice of Intent to Cancel or the [March 14, 2018] Notice of Cancellation until after the accident or injury in this dispute. There was no contact with IPFS to dispute the amounts due or anything else that would lead this [WCJ] to believe that there was any indication of confusion on behalf of Employer whether or not [it was] in default of payments.

R.R. at 28a.

The foregoing demonstrates that Employer failed to prove by credible, clear, and convincing evidence that its owner was confused with respect to the notices that were received, the nonpayment of premiums, or the circumstances underlying the cancellation of the Policy. Likewise, Employer failed to show by credible clear and convincing evidence that it relied on any representation by IPFS to its detriment. In a similar circumstance, this Court explained:

[The e]mployer suffered no detriment under the facts of this case. When [the e]mployer paid the $4,981.00 to [the insurer], it may well have *believed* that its insurance was

15

> thereby being reinstated. [The e]mployer might have even refrained from making this payment if it had realized that this payment was for premium arrearages and would not result in the reinstatement of its policy. However, the payment of a legally binding debt does not constitute a detriment. Since [the e]mployer's payment of $4,981.00 fulfilled a lawful obligation to [the insurer], [the e]mployer suffered no detriment by this payment.

*Walker*, 656 A.2d at 171 (emphasis in original and citation omitted). Likewise, in this case, Employer suffered no detriment from its partial payment of arrearages prior to the Policy's cancellation.

In sum, Employer failed to demonstrate by credible, clear, and convincing evidence that IPFS should be equitably estopped from cancelling the Policy based on the nonpayment of premiums prior to Claimant's accident and the resultant compensable work-related injuries. As a result, the Board did not err in affirming the WCJ's decision in this regard.

Accordingly, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dalton's Towing & Recovery, LLC,     :
                                     :
                        Petitioner   :
                                     :
            v.                       : No. 647 C.D. 2020
                                     : No. 648 C.D. 2020
Workers' Compensation Appeal         :
Board (King, State Workers'          :
Insurance Fund, Uninsured            :
Employers Guaranty Fund, and         :
Pinnaclepoint Insurance Company      :
c/o Brickstreet Insurance),          :
                                     :
                        Respondents  :


# **O R D E R**


AND NOW, this 3rd day of December, 2021, the order of the Workers'
Compensation Appeal Board dated June 10, 2020, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge