501 So.2d 681 (1987)
Kimberly Scheider HELPER, Appellant,
v.
ATLAS MUTUAL INSURANCE CO., American Standard Agencies, and Lyle Bray, Appellees.
No. BL-332.
District Court of Appeal of Florida, First District.
January 22, 1987.
*682 V. James Facciolo and Edward Allen Backus of Cowles, Hayden, Facciolo, McMorrow & Barfield, Jacksonville, for appellant.
William S. Burns, Jr. of Marks, Gray, Conroy & Gibbs, Jacksonville, for appellees.
ZEHMER, Judge.
We review a summary judgment holding that the automobile insurance policy purchased by appellant, Kimberly Hepler, from Atlas Mutual Insurance Company was not in effect on the date of her accident due to nonpayment of the renewal premium. For reasons explained hereafter, we reverse and remand for further proceedings.
In the fall of 1983 Ms. Hepler obtained a motor vehicle insurance policy from Atlas. The effective period of the policy was from November 1, 1983, to May 1, 1984, and the insurer had "the right not to renew or continue it [the policy] only at each anniversary of its original effective date." The parties agree that the anniversary date was November 1, 1984. Ms. Hepler paid the entire $155.00 premium for the six-months period in advance, and Atlas did not send any subsequent notices of premium due. On May 23, 1984, Ms. Hepler's automobile was involved in an accident. She notified Atlas and filed a claim for property damage and personal injury protection benefits. Atlas denied her claim, contending that the policy coverage lapsed on May 1 for non-payment of the renewal premium due for the period May 1 through November 1, 1984. In this suit Ms. Hepler contends that she did not pay the premium because she had not received a statement that the premium was due and that Atlas' failure to send such notice caused the coverage under the policy to remain in effect through the date of her accident.
For purposes of the motions for summary judgment filed by the parties, it was stipulated as follows: During the period November 1, 1983, through May 1, 1984, the policy (attached to the stipulation) was in effect, the premium was fully paid, and no additional premium was due; Ms. Hepler was involved in an automobile accident on May 23, 1984; at no time prior to May 1, 1984, did Atlas contact Ms. Hepler and advise her that Atlas would not renew or continue the insurance coverage beyond May 1, or send her a premium-due notice or application for insurance coverage beyond May 1; Ms. Hepler did not tender a premium to Atlas for insurance beyond May 1 prior to the filing of this suit.
Paragraph seven of the policy reads in part:

*683 TERMINATION
Cancellation: This policy may be cancelled during the policy period as follows:
* * * * * *
2. We may cancel by mailing by registered or certified mail or United States Post Office proof of mailing to the named insured shown in the Declarations at the address shown in the policy:
a. at least 10 days notice if cancellation is for nonpayment of premium; or
b. at least 45 days notice in all other cases.
3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:
a. for nonpayment of premium; or
b. if your driver's license ... has been suspended or revoked. This must have occurred:
(1) during the policy period; or
(2) since the last anniversary of the original effective date if the policy period is other than 1 year.
Nonrenewal. If we decide not to renew or continue this policy, we will mail advance notice to the named insured shown in the Declarations at the address shown in this policy at least 45 days before the end of the policy period. Notice will be mailed by registered or certified mail or United States Post Office proof of mailing. If the policy period is other than 1 year, we will have the right not to renew or continue it only at each anniversary of its original effective date.
We will not refuse to renew or continue this policy solely because:
1. You were convicted of one or more traffic violations which did not involve an accident or cause revocation or suspension of your driving privilege; or
2. You have had only one accident if we have insured your covered auto for a period of at least 5 years immediately preceding the renewal date.
Automatic Termination: If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.
If you obtain other insurance on your covered auto any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.
Other Termination Provisions:
1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.
2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.
3. The effective date of cancellation stated in the notice shall become the end of the policy period.
The policy does not set forth the amount of the renewal premium due for coverage from May 1 to November 1, 1984. Although the renewal premium could be increased by Atlas, the policy does not expressly require Atlas to give its insured notice of the amount of the renewal premium in advance of the premium due date.
The trial court granted summary judgment for Atlas, ruling that under the policy provisions Ms. Hepler "had an irrevocable right to renew her policy for an additional six-months period, beginning May 1, 1984," but that this "irrevocable right to renew the insurance policy for an additional term was an outstanding offer for renewal pursuant to the Automatic Termination Provisions in Paragraph 7 of the insurance policy which required some affirmative action on the part of the Insured to manifest an acceptance of this renewal offer and the payment of the renewal premium on or before the end of the then-current policy period." The court further ruled that Atlas "had no statutory, contractual, or legal duty to send to the plaintiff any oral or written notice of renewal or premium."
*684 Ms. Hepler raises two points on appeal. First, she contends that, contrary to the ruling of the court below, the policy provisions precluding cancellation or nonrenewal of the policy for at least one year gave rise to a duty on the part of Atlas to give her advance notice of the renewal premium amount and due date. Second, she contends that, in light of the renewal provisions of the policy, Atlas was under a statutory duty to give the insured at least ten days notice that the insurance was being cancelled and a statement of the reason, i.e., nonpayment of premium, pursuant to section 627.7281, Florida Statutes (1983).
Resolution of appellant's points on appeal requires review of the purpose of this motor vehicle insurance, the statutory scheme for effecting that purpose, the intent of the parties as manifested in the insurance agreement, and general business practices relating to the giving of notice of premium due on renewable automobile insurance policies.
The insurance policy issued by Atlas provided coverage for liability, damage to the insured's automobile, and personal injury protection (PIP). We therefore start from the premise that Ms. Hepler, as the owner and operator of the insured vehicle, obtained this insurance policy to comply with the security requirements of sections 627.733-627.736, Florida Statutes (1983), and to protect Barnett Bank, as lien holder, against loss of its security interest in the vehicle. Failure to have statutorily required security in effect while operating her vehicle in this state would require suspension of Ms. Hepler's vehicle registration and operator's permit. § 627.733(5), Fla. Stat. (1983). The penalties for failure to maintain the minimum security required by statute evidence a strong public-policy interest in having car owners maintain motor vehicle insurance coverage.
The statutes likewise manifest a strong public-policy interest in having motor vehicle insurance made readily available to owners and operators of automobiles at the lowest reasonable cost, without interruption, lapse, or termination of coverage due to unwarranted cancellation or nonrenewal by the insurer, or because of the insured's inadvertent failure, for lack of knowledge that the coverage is about to be terminated, to take the actions necessary to continue the policy in force. To this end, the Florida Insurance Code[1] contains elaborate provisions for the regulation and sale of such insurance, including provisions (in part VIII of chapter 626) protecting against unfair trade practices in setting premium rates and selling policies. It also contains a policyholder's "bill of rights" which guarantees, among other things, that "policyholders shall have the right to competitive pricing practices and marketing methods that enable them to determine the best value among comparable policies." § 626.9641, Fla. Stat. (1983). Thus, to afford reasonable comparison of insurance costs free of coercion to continue with any particular insurer, information on the amount of the premium must be provided in a timely manner to the person purchasing insurance. Chapter 627 contains detailed provisions governing ratemaking for automobile policies. It requires that rates be independently set by each motor vehicle insurer and that these rates be filed with the Department of Insurance. See §§ 627.011-627.381, Fla. Stat. (1983).
Part II of chapter 627 contains general provisions governing all insurance contracts subject to regulation by the insurance code. After defining the terms "policy" and "premium" (§§ 627.402 and -.403), this part sets forth the required contents of the policy. The policy must include, among other things, the amount of "the premium" except that, "if under the policy the exact amount of premium is determinable only at stated intervals or termination of the contract, a statement of the basis and rates upon which the premium is to be determined *685 and paid shall be included." § 627.413(1) and (2), Fla. Stat. (1983).
Part XI, chapter 627, specifically relating to "Motor Vehicle and Casualty Insurance Contracts," is made subject to the general provisions in part II of that chapter by section 627.726, Florida Statutes (1983), and contains elaborate provisions in sections 627.728 and 627.7281 which limit a motor vehicle insurer's right to terminate policy coverage by cancellation or nonrenewal without giving appropriate notice to the insured. Section 627.728(1)(b) defines the terms "renewal" or "to renew" to mean "the issuance and delivery by an insurer of a policy superceding at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term." Section 627.728(1)(c) defines "nonpayment of premium" to mean "failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy or any installment of such premium" (emphasis added). Because the statutes do not define the term "when due," its meaning must be determined by statutory construction.
Section 627.728(2) limits the right of the insurer to cancel motor vehicle insurance to three specified grounds, one of which is "nonpayment of premium." Subsection (3) requires that reasons for cancellation accompany the notice and that the notice and reasons be "mailed or delivered by the insurer to the named insured" at least forty-five days prior to the effective date of cancellation, "except that, when cancellation is for nonpayment of premium, at least 10 days' notice of cancellation" shall be given. Both subsections (2) and (3), however, are expressly made inapplicable "to nonrenewal."
Further evidence of statutory intent to prevent an insured's inadvertent termination of coverage is found in section 627.728(4)(a), which relates to "nonrenewal." This section provides:
No insurer shall fail to renew a policy unless it mails or delivers to the named insured, at the address shown in the policy ... at least 45 days' advance notice of its intention not to renew; and the reasons for refusal to renew must accompany such notice. This subsection does not apply:
1. If the insurer has manifested its willingness to renew; or
2. In case of nonpayment of premium.
... Unless a written explanation for refusal to renew accompanies the notice of intention not to renew, the policy shall remain in full force and effect.

(Emphasis added.) The emphasized sentence manifests a statutory intent that coverage not automatically terminate at the end of the policy period unless the insurer has complied with the notice and explanation requirements of the statute.
Section 627.728(6) requires that coverage may not be terminated without advising the insured of alternative ways to obtain new coverage:
When a policy is canceled, other than for nonpayment of premium, or in the event of failure to renew a policy to which subsection (4) applies, the insurer shall notify the named insured of his possible eligibility for insurance through the Automobile Joint Underwriting Association. Such notice shall accompany or be included in the notice of cancellation or the notice of intent not to renew.
Exceptions for "nonpayment of premium" in the above cited statutory provisions are presumably included in contemplation of an insured's conscious decision to terminate coverage with a particular insurer by not remitting payment when he or she knows a premium is due.
Section 627.7281, added by the legislature in 1982, requires that:
An insurer issuing a policy of motor vehicle insurance not covered under the cancellation provisions of s. 627.728 shall give the named insured notice of cancellation at least 45 days prior to the effective date of cancellation, except that, *686 when cancellation is for nonpayment of premium, at least 10 days' notice of cancellation accompanied by the reason therefor shall be given.
This section appears to have been added to make certain that statutory requirements for notifying an insured that coverage is about to terminate for stated reasons would apply in all cases, not just those cases covered by section 627.728.
Although no notice of cancellation or nonrenewal of insurance binders for sixty days or less need generally be given by the insurer, in 1985 an express exception to this general rule was included in section 627.420. This exception requires the insurer to "give 5 days prior notice of cancellation of a binder, unless the binder is replaced by a policy or another binder in the same or another company."[2]
In view of the elaborate notice provisions contained in sections 627.728 and 627.7281 limiting cancellation and nonrenewal of automobile insurance without appropriate notice, we have no difficulty in discerning that the statutory scheme in Florida, which excuses such notice only when the insured has failed to pay the required amount of the premium when due, contemplates that the insurer will at least notify the insured of the amount of the renewal premium due and give such notice sufficiently in advance of the due date to afford the insured a reasonable opportunity to make payment without lapse or interruption of continuous coverage. Accordingly, we construe the term "when due," as used in the statutory definition of "nonpayment of premium," to require that reasonable notice of the premium amount be given in advance of the due date before the insured may be deemed to have failed to discharge any obligation under the policy to pay the premium. This construction comports with the intent manifested by the statutory language and protects the public interest in assuring continuous insurance coverage on automobiles driven on the roads and highways of Florida. It protects against the insured's inadvertent failure to remember when premiums are due and prevents insurers from avoiding the notice requirements by withholding notification of the premium amount and allowing the policy to expire for nonpayment of the renewal premium.
Several appellate decisions in this state have held the section 627.728 requirement of ten days notice of cancellation inapplicable where the renewal premium was not paid on or before the due date. These cases draw a distinction between "cancellation" and "nonrenewal," both of which require statutory notice, and "lapse," which does not. They rationalize that nonpayment of premium causes the policy coverage to lapse, rather than operating to cancel the policy. Williams v. Security Mutual Casualty Co., 377 So.2d 733 (Fla. 3d DCA), cert. denied, 388 So.2d 1120 (Fla. 1980); Travelers Indemnity Co. of Rhode Island v. Mirlenbrink, 345 So.2d 417 (Fla. 2d DCA 1977); Safeco Insurance Co. v. Oehmig, 305 So.2d 52 (Fla. 1st DCA 1975). In each of these cases, the insurance company sent the insured notice of the premium due, including the amount, and the insured, in disregard of such notice, failed to pay the premium by its due date. Under these circumstances, the courts have sustained denial of coverage of an accident occurring after the expiration date of the policy. But the cited cases do not control the precise question before us. Here the insurance company admits that no notice of *687 renewal premium was ever sent to the insured, and we distinguish the cited cases for this reason.
In analyzing the policy provisions, we must comply with the requirement in section 627.419(1) that "every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." We agree with the trial court that the provisions of paragraph seven of the insurance policy gave Ms. Hepler "an irrevocable right to renew her policy for an additional six-month period beginning May 1, 1984." But we are unable to approve the trial court's construction of the policy provisions as constituting "an outstanding offer for renewal pursuant to the Automatic Termination Provisions in Paragraph 7 ... which required some affirmative action on the part of the Insured to manifest an acceptance of this renewal offer and the payment of the renewal premium on or before the end of the then-current policy period," so that, as a result of Ms. Hepler's failure to do so, coverage "was conclusively terminated on May 1, 1984."
Observing that the notice provisions in paragraph 7 of the policy closely parallel the statutory notice provisions discussed above, we conclude that the language and intent of both is essentially the same with regard to protecting the insured from inadvertent loss of coverage through unintentional failure to timely pay a renewal premium. The policy provisions should be construed as undertaking to implement the insured's statutory rights by impliedly requiring that Atlas give notice of the premium amount reasonably in advance of its due date.
The insurance contract does not unambiguously inform Ms. Hepler that it was her duty to pay the renewal premium before the due date irrespective of whether a statement of premium due was furnished by Atlas. Ambiguities in insurance contracts must be construed against the insurer. Hartnett v. Southern Insurance Co., 181 So.2d 524 (Fla. 1965). It is also well established that ambiguities in contracts may be resolved by taking into account the course of dealing between the parties. Lalow v. Codomo, 101 So.2d 390 (Fla. 1958). Whether or not Atlas followed any particular business practice with regard to renewal premiums is also pertinent to resolving such ambiguities. Boman v. State Farm Mutual Automobile Insurance Co., No. BI-113 (Fla. 1st DCA 1987).
Neither the record nor the lower court order suggested what action by Ms. Hepler was contemplated by the policy as constituting an unqualified acceptance of the "outstanding offer of renewal." The policy did not specify the amount of the renewal premium or guarantee renewal at the same premium. It is an elementary principle of contract law that when an offer which does not contain all essential elements of the contract is accepted by a communication that does not supply the missing element, the purported agreement is too vague to constitute an enforceable contract. See Truly Nolen, Inc. v. Atlas Moving & Storage Warehouses, Inc., 125 So.2d 903 (Fla. 3d DCA 1961), cert. discharged, 137 So.2d 568 (Fla. 1962). The amount of the premium is obviously an essential part of the insurance contract since the statute explicitly requires that the amount be set forth in the policy or that the ratemaking basis for the premium be determinable from the face of the policy. Only the insurance company  not the insured  has the knowledge, manuals, and ratemaking responsibility necessary to set the premium and file it with the department. It is reasonable, therefore, in the absence of any express contract provision, that the insurer comply with the statute by making the amount of the premium it sets known to the insured as an essential element of its offer to renew. Otherwise, an insurer cannot be in compliance with the requirements of section 626.9641 that "policyholders shall have the right to competitive pricing practices and marketing methods that enable them to determine the best value among comparable policies."
*688 At oral argument it was suggested by counsel for Atlas that Ms. Hepler should have called or otherwise contacted Atlas before the expiration of coverage on May 1, 1984, to determine the amount of the premium so she could timely pay it. But we find no evidence in this record of a general business practice requiring the insured to call Atlas to determine the amount of the renewal premium. Nor is there any evidence that Atlas does not routinely give renewal notice to its insureds. The record is also silent as to Ms. Hepler's knowledge or expectation in that regard.
On the other hand, we do know, from our reading of Florida cases and authorities from other jurisdictions, that it is a widespread general practice for insurers to send advance notice when a premium is due. Likewise, we are persuaded by the observations of the Pennsylvania Supreme Court in Jarvis v. Workmen's Compensation Appeal Board, 497 Pa. 379, 441 A.2d 1189 (1982), overruling its prior decision in Luther v. Coal Operators Casualty Co., 379 Pa. 113, 108 A.2d 691 (1954). Luther held that insurers were under no legal duty to give notification that a renewal premium was due. After noting that the rationale of Luther "was, in essence, that the responsibility for overseeing the continuity of an insured's coverage rested solely upon the policyholder, and that the insured had no legitimate expectation of assistance in this regard from the insurer" (441 A.2d at 1190), the court stated:
The stated rationale, although perhaps relevant to expectations arising from insurance contracts entered during the early 1950's, when the Luther case arose, at least today does not reflect the realities of insurance industry customs, and the concomitant expectations of parties to insurance contracts. Common experience demonstrates that, in practice, routine billing procedures in the insurance field induce the belief that the insured is relieved of responsibility for monitoring the dates for policy expiration and premium payment. The insured has learned to rely wholly upon notices from insurance carriers and their agents for information as to impending expirations of policies and the need for action to maintain coverage. Indeed, this reliance has been encouraged by insurers and their agents, who, in the interest of retaining business, have almost invariably furnished such notices despite the absence of an express request therefor by the insured. The typical policyholder maintains no awareness of the date when his coverage expires, having been lulled into the belief that notice will be forthcoming as to the date when further action on his part is required. The insurance carrier, being responsible for instilling such reliance, cannot be permitted to silently ignore the harm that can result from failure to notify the insured of the termination of an agent, and the consequent nonrenewal of coverage. Recognition of a carrier's duty to provide the expected notice is, therefore, necessary, and when a breach of that duty occurs, as in the present case, the carrier shall be estopped from asserting the expiration of the policy as a bar to recovery.
441 A.2d at 1190-91. We decline to distinguish that case on the ground that it involved workers' compensation insurance. Indeed, the Pennsylvania court rejected the appellee Board's argument that the court should not imply a legal duty to give notice of nonrenewal in workers' compensation cases because the Pennsylvania legislature had specifically adopted statutory requirements to provide notice of nonrenewal of automobile insurance policies, but had not included such requirements with respect to workers' compensation insurance. 441 A.2d at 1191, n. 2.
From this construction of the statutes and policy provisions, it follows that the admitted failure of Atlas to ever notify Ms. Hepler of the amount of the renewal premium precludes summary judgment for Atlas. Section 627.728(4) requires Atlas to give advance notice of its refusal or intention not to renew (except for nonpayment of premium which we have found to be inapplicable in this case) and further provides that "unless a written explanation for refusal to renew accompanies the notice of intention not to renew, the policy shall remain *689 in full force and effect." Similarly, the automatic termination provision in paragraph 7 of the policy states that the policy will automatically terminate at the end of the current policy period "if we offer to renew or continue and you or your representative do not accept." Failure to notify Ms. Hepler of the amount of the premium amounted to a failure to "offer to renew or continue" the policy. Ms. Hepler's obligation to tender payment of the renewal premium would arise only when such notice was given by Atlas; thus, she never defaulted on the obligation to pay the premium. Since Atlas did not otherwise comply with the nonrenewal provisions of section 627.728 (and, indeed, was not free to do so until the first anniversary date of November 1, 1984), under the terms of the statute the insurance policy remained "in full force and effect" as of May 23, the date of Ms. Hepler's accident.
Atlas cites Lewis State Bank v. Travelers Insurance Co., 356 So.2d 1344 (Fla. 1st DCA 1978), for the proposition that the insurer is under no legal duty to give notice of premium due in the absence of express contract provisions requiring it. Not only is that case factually distinguishable for several reasons, the principles of law relied on by the court are completely consistent with this decision. For example, the case involved a policy of life insurance, not motor vehicle insurance, in which the amount of the annual premium was specified in the policy and known to the parties, and the case did not involve any statutory provisions such as we have discussed here. The specific issue before the court in Lewis was not whether the insurance company failed to give the insured required notice that a premium was due, but whether the insurer was under a duty to give such notice to the bank as assignee of the policy to secure the insured's indebtedness to the bank. In reaching its decision, the court recognized and approved the general rules that "`[i]n the absence of any statute or contract of the insurer to the contrary or conduct of the insurer giving rise to a duty to notify the assignee, there is no duty on the insurer to notify an assignee of the policy of premiums or assessments due thereon'" (356 So.2d at 1346), and that "conduct by an insurer can create a duty to notify an assignee that policy premiums are due" so that "`where an assignee was led into the belief that he could safely rely on receiving notice the policy could not be cancelled by the insurer for non-payment of premiums without notice to the assignee'" (Id. at 1348). It found these rules had no application to the facts of the case and affirmed the dismissal of the bank's complaint, however, because the policy contained no provisions giving rise to any requirement that the insurer give the bank notice that the premium was coming due, and the complaint failed to allege facts showing "any conduct by the insurer, toward the bank, tending to lead the bank to rely justifiably on an expectation that it would receive notice of nonpayment of premiums: Nor is there an allegation that the bank relied on any such conduct" (Id. at 1348). In short, nothing in that decision is inconsistent with what we have decided today.
In view of this holding we find it unnecessary to reach the appellant's argument based on section 627.7281.
The summary judgment is REVERSED and the cause is REMANDED for further proceedings.
BOOTH, C.J., and WENTWORTH, J., concur.
NOTES
[1] The "Florida Insurance Code" includes, among others, chapters 624, 626 and 627, Florida Statutes. § 624.01, Fla. Stat. (1983). Section 624.605, defining "casualty insurance," contains a detailed definition of "vehicle insurance" subject to the provisions of the Florida Insurance Code.
[2] This amendment, made by section 1, chapter 85-51, Laws of Florida, became applicable to binders and policies issued after May 30, 1985, and hence was not explicitly applicable to the policy issued to Ms. Hepler in 1983. Nevertheless, since a similar exception was effectively added to the statutes in 1982 with the enactment of section 627.7281, requiring 10 days notice of cancellation for nonpayment of premium, the provision does indicate the legislature's continuing concern for protecting holders of automobile insurance against unknowing loss or termination of insurance coverage. § 67, ch. 82-386, Laws of Florida. This exception appears to have been moved to section 627.420 concurrent with the 1985 amendment of section 627.7281, which excluded binders not having a duration exceeding sixty days from the definition of "policy," as used in this section. § 3, ch. 85-51, Laws of Florida.