505 So.2d 445 (1987)
Johnny T. BOMAN, Sr., and Iva Boman, His Wife, Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Appellee.
No. BI-113.
District Court of Appeal of Florida, First District.
January 22, 1987.
On Motion for Rehearing and Rehearing March 18, 1987.
*446 Jack M. Shemer, of Coxe, Shemer & Smith, Jacksonville, for appellants.
Jack W. Shaw, Jr., P.A., and J. Stephen O'Hara, Jr., of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for appellee.
On Motion for Rehearing and Rehearing En Banc March 18, 1987.
ZEHMER, Judge.
Johnny and Iva Boman brought this declaratory judgment action against State Farm Mutual Automobile Insurance Company (State Farm) to establish that their automobile insurance policy was in effect during August 1983, when they were involved in an automobile accident. The trial court granted summary judgment for State Farm on grounds that the Bomans had failed to pay the renewal premium when due. The Bomans appeal, raising three issues: (1) whether the insurance contract *447 imposed a duty on State Farm to notify the Bomans when the renewal premium became due; (2) whether Florida statutes created such a duty; and (3) whether the evidence in the record demonstrated any disputed issues of material fact regarding State Farm's failure to send notice that the renewal premium was due. Based on our decision in Hepler v. Atlas Mutual Insurance Co., 501 So.2d 681 (Fla.App. 1987) which is being released this date, we reverse and remand for further proceedings.
The facts and policy provisions involved, construed most favorably for the Bomans and against State Farm,[1] reveal the following events. In 1977 the Bomans obtained this automobile insurance policy through their State Farm insurance agent, Joe Carlucci. During the ensuing years State Farm billed the Bomans for renewal premiums, and these were timely paid. The Bomans have dealt extensively with Carlucci's office over the years. They insured four vehicles with State Farm at the time of this accident. When the Bomans purchased a Volkswagen Rabbit in 1982 they had their State Farm policy amended to cover this car. The premium covering the Volkswagen was paid and the policy last renewed for the period October 18, 1982, through April 18, 1983.
The Bomans contend they were never notified by State Farm or Carlucci's office that the renewal premium was due for the succeeding six-month period. Because in the past they had always received premium-due notices, the Bomans did not realize that their premium was due, and simply assumed that their insurance coverage continued in effect. When they called Carlucci's office in August 1983 to give notice of the accident to State Farm, an employee told them that the office files showed the insurance on the Volkswagen to be no longer in effect. The employee said, however, that the file contained no indication of the reason for the lack of insurance and that she knew the Bomans always maintained insurance on their vehicles. She suggested, therefore, that they contact the lien-holder, Barnett Bank, to learn what the Bank's file showed. The bank's file revealed a notice from State Farm dated April 27, 1983, indicating that the Bomans' insurance on the Volkswagen remained in effect. The Bomans contacted Carlucci's office and were again told that the file contained no indication why the car was not insured. Carlucci's office eventually informed the Bomans that their insurance coverage had lapsed on April 18, 1983, for nonpayment of the April renewal premium.
In support of its motion for summary judgment, State Farm filed the affidavit of Kim Pittman, an employee in Carlucci's office, stating that she remembered mailing a letter dated May 17, 1983, to the Bomans which stated that their insurance had lapsed for nonpayment of premium. The file copy of this letter is in the record and reveals that it is not in standard business-letter form, and includes no name or address of the insured. State Farm filed a second affidavit showing that its standard procedure is to send, thirty-four days before the premium due date, a notice to its customers that their insurance is coming due and advising them of the amount of the renewal premium. If the premium is not timely paid, a notice to that effect is sent to the policyholder fourteen days after the due date, and a similar notice is sent to the lienholder fourteen to twenty-one days after the due date. Twenty-four days after the due date, notice is sent to the agent that the premium has not been paid. According to this affidavit, all these notices are automatically generated by State Farm's computer and mailed. State Farm presented no evidence that these notices were actually mailed to the Bomans, and relied entirely on its usual custom and practice to have such documents routinely generated by the computer.
In opposition to State Farm's motion, every member of the Boman family made an affidavit stating that he or she had not received any notices concerning the April premium. They further stated that in the *448 past they had always received a notice before a premium became due and that they relied on this practice. The Bomans also filed affidavits by employees of Barnett Bank stating that the bank did not receive notice of a renewal premium due and unpaid. The affidavit states that the only notice Barnett received from State Farm was dated April 27, nine days after State Farm contends the policy had lapsed, and showed the policy to be in full effect.[2]
The following pertinent provisions are included in the policy general conditions:
4. Renewal.
Unless within 59 days of the policy effective date, we mail or deliver a notice of cancellation to you, we agree:
a. to continue it in force until the end of the current policy period; and
b. to renew the policy for the next policy period at the rates then in effect unless we mail to you written notice of our intention not to renew. The notice will be mailed to your last known address at least 45 days before the end of the current policy period. The mailing of it shall be sufficient proof of notice.
These agreements to continue and renew are void:
a. if you fail to pay the premium when due... .
(Underscoring added.) Similarly, paragraph 5 of the general conditions states that State Farm may cancel the policy by written notice ten days before the effective cancellation date if cancellation is for non-payment of premium, and forty-five days before the effective date if cancellation is for any other reason. Although there is a space denominated for the "premium for this policy period" on the "Declarations Page," there is no premium amount shown in the policy. The policy included personal injury protection coverage and was obviously obtained to comply with the statutory requirements. §§ 627.733-627.736, Fla. Stat. (1983); Hepler v. Atlas Mutual Insurance Co., 501 So.2d 681.
We agree with appellants that the policy provisions and the Florida Insurance Code,[3] construed in context with each other, create an implied duty on State Farm to notify its insured of the amount of the renewal premium and the date it is due. State Farm's agreement to renew is consistent with section 627.728, Florida Statutes (1983), and permits renewal coverage to be terminated if the insured fails to pay the renewal premium "when due." The declarations page from the policy which took effect in October 1982 specifically stated, "DO NOT PAY PREMIUMS SHOWN ON THIS PAGE. SEPARATE STATEMENT ENCLOSED IF AMOUNT DUE." The policy provides that renewal will be at the rates "then in effect," and does not agree that coverage will be renewed at the same premium. Therefore, the insured must be informed of those rates at the time of renewal by a statement from State Farm as a condition precedent to the insured's obligation to make payment.
State Farm relies heavily on language in the contract which specifies that the renewal premium must be paid before the end of the current policy period:
The policy period is shown under "Policy Period" on the declarations page and is for successive periods of six months each for which you pay the renewal premium. Payments must be made on or before the end of the current policy period.
This provision, they argue, unequivocally informed the Bomans that their insurance would be renewed only if the renewal premium was paid before the then-current policy period expired, and precluded any extension of coverage by implication or estoppel beyond the original policy period. This provision, however, must be read in conjunction with the other policy provisions *449 and the applicable statutes discussed in Hepler v. Atlas Mutual Insurance Co., 501 So.2d 681. As held in Hepler, unless the insured fails to pay the renewal premium when due, coverage under the renewal provisions continues in effect absent compliance with the cancellation or nonrenewal requirements in section 627.728.
Following our decision in Hepler, we interpret the applicable statutes and policy provisions in this case to mean that a renewal premium is not "due" until notice of the premium amount is sent by the insurer to the insured. The insurance contract does not unambiguously inform the insured that it is his duty to pay the renewal premium before the due date, whether or not a statement of premium due is furnished by the insurer. Ambiguities in insurance contracts must be construed against the insurer. Hartnett v. Southern Insurance Company, 181 So.2d 524 (Fla. 1965). It is also well established that ambiguities in contracts may be resolved by taking into account the course of dealing between the parties. Lalow v. Codomo, 101 So.2d 390 (Fla. 1958). State Farm established that its usual practice is to send the insured such statements thirty days before the renewal due date, and the Bomans state they relied on this practice.
State Farm cites Williams v. Security Mutual Casualty Co., 377 So.2d 733 (Fla. 3d DCA 1980); Travelers Indemnity Co. of Rhode Island v. Mirlenbrink, 345 So.2d 417 (Fla. 2d DCA 1977); and Safeco Insurance Co. of America v. Oehmig, 305 So.2d 52 (Fla. 1st DCA 1975) in support of its argument that section 627.728, Florida Statutes, does not require any notice where a policy lapses for nonpayment of premium. These cases, however, do not support entry of summary judgment for State Farm. In each case, the insurer's giving of notice of premium due was not disputed. Here, the Bomans have averred that State Farm failed to send any statement or notice of the premium due. Therefore, since the record does not support the conclusion, as a matter of law, that State Farm did so, the cited cases are distinguishable for the reasons stated in Hepler, and the summary judgment for State Farm cannot be affirmed on this ground.
State Farm also contends that its evidence that a statement of the premium due was mailed to the Bomans is sufficient to require entry of summary judgment. It points to the express provisions in the policy general conditions that mailing of required notices of cancellation or nonrenewal "shall be sufficient proof of notice," and cites Service Fire Insurance Co. of New York v. Markey, 83 So.2d 855 (Fla. 1955), and its progeny, e.g., Woodcock v. Motors Insurance Corp., 422 So.2d 959 (Fla. 3d DCA 1982); Difalco v. Industrial Fire & Casualty Insurance Co., 400 So.2d 1057 (Fla. 3d DCA 1981): Aetna Casualty & Surety Co. v. Simpson, 128 So.2d 420 (Fla. 1st DCA 1961), for the proposition that "convincing evidence of mailing is not rebutted merely by evidence that the notice was not actually received." 83 So.2d at 856. This presumption of notice based on the mere act of mailing effectively shifted the risk of nondelivery from the insurer to the insured. We note, however, that those cases involved both policy[4] and statutory[5] provisions which did not require proof of mailing in any particular manner. In 1982, section 627.728(5) was amended by section 545, chapter 82-243, Laws of Florida, to require that the presumption of notice through mailing apply only if the notice be sent in the manner specified:
United States postal proof of mailing or certified or registered mailing of notice of cancellation, or intention not to renew, or of reasons for cancellation to the named insured at the address shown in *450 the policy shall be sufficient proof of notice.
In view of the statutory change limiting the manner of mailing notice which is applicable in this case, we do not treat those cases as controlling precedent.
We agree with appellants that section 627.728(5), as amended in 1982, limits the presumption of sufficient notice recognized in Markey to mailings made in conformance with the statutory requirements, and that less restrictive policy provisions regarding any kind of mailing do not take precedence over, and thus relax, the statutory requirements. Its purpose is analogous to that of the statute of frauds. Written proof of mailing is a higher order of proof and gives far better assurance that actual mailing has occurred than does proof based on usual custom and practice or often-unreliable recall testimony. Moreover, we would have to shut our eyes to the reality of experience not to recognize that the reliability of mail delivery in recent years has often left much to be desired. The restrictive methods of mailing now specified by the statutory change are more likely to assure actual delivery to, and thus receipt by, the insured. This statutory change indicates a legislative intent that the act of mailing will no longer be treated as sufficient proof of notice to the insured unless accomplished in the specified manner. Since the statutory amendment has effectively left the risk of nondelivery with the insurer when notice is not mailed in conformity with the statute, it follows that inconsistent policy provisions providing that mere mailing is sufficient are rendered invalid and thus ineffective to shift the risk of nondelivery to the insured. Cf. Nunley v. Florida Farm Bureau Mutual Insurance Co., 494 So.2d 306 (Fla. 1st DCA 1986). Under this construction of the statute, customary evidence of mailing (such as the testimony of an employee that it is the usual custom and practice to place the notice in the post office mail receptacle), is competent proof of that fact, but may be rebutted by evidence to the contrary, including evidence of nonreceipt, and thereby create a question of fact for the jury.
In this case there was no proof of mailing in compliance with the statute. State Farm produced evidence only that notices are usually prepared and sent by their computer; it produced no evidence by any witness having personal knowledge that these notices were actually prepared and placed in the mails. Even the asserted mailing of notice of lapsed policy by Carlucci's office on May 17, 1983, after the insurance had allegedly lapsed for nonpayment or premium, failed to comply with the statutory requirement that the insured be notified of nonrenewal or cancellation before the insurance premium becomes due. Appellants, on the other hand, produced not only their own affidavits of nonreceipt, but also affidavits of Barnett Bank employees showing the bank had received notice that the policy remained in effect.
We hold, therefore, that the evidence in this record reveals material facts in dispute and fails to establish as a matter of law that State Farm sent the required notice of renewal premium due. Accordingly, the summary judgment must be reversed and the cause remanded for further proceedings.
REVERSED and REMANDED.
SHIVERS and BARFIELD, JJ., concur.

ON MOTION FOR REHEARING AND MOTION FOR REHEARING EN BANC
ZEHMER, Judge.
Appellee, State Farm Mutual Automobile Insurance Company, has filed a seven-page motion for rehearing and an eleven-page motion for rehearing en banc. For the most part, these motions reargue the case on the merits contrary to the spirit and purpose of rules 9.330 and 9.331, Florida Rules of Appellate Procedure. Because certain comments in the motions suggest that appellee has misunderstood and misconstrued our holding, however, we clarify our opinion to make its intent clear.
State Farm contends that we have misapprehended the scope of section 627.728 in holding that it applies to notices of renewal *451 premiums. This distorts the true holding of the opinion. We simply held that, unless an insured has failed to pay a premium when due (i.e., after proper notice of the amount due and the due date, which may be sent by ordinary mail or in any fashion determined by the insurance company), the insurance coverage continues in effect unless the insurance company sends a notice of cancellation or nonrenewal that complies with the requirements of section 627.728. We have not held, as stated in State Farm's motion, that the premium notice itself must be sent in compliance with that statute. Although the effect of our holding is that coverage does not lapse for nonpayment of premium until notice of cancellation or nonrenewal is given in compliance with the statute, mailing of such notices with return receipt requested should occur only in those few cases where the insured fails to timely pay the premium.
State Farm also suggests that our opinion fails to recognize the distinction between an insurer's decision to terminate an insurance policy and an insured's decision to terminate a policy, arguing that public policy supports the insured's right to cancel the policy merely by nonpayment of premium. Not only does our opinion recognize the public policy arguments made by State Farm, however, but it gives them effect. Our construction places on the insurance company the burden to make certain that an insured actually intends to discontinue the policy, while allowing an insured to terminate coverage by simply refusing to pay the renewal premium. We have attempted to reconcile State Farm's procedure with the statutory provisions and public policy evidenced thereby, and believe our construction of the statute does so by reducing the risk of inadvertent termination of coverage without requiring additional effort by the insured to effect termination by nonpayment. Moreover, State Farm will not remain obligated indefinitely on policies of insurance despite the failure of the insured to pay the premium due so long as it promptly issues the appropriate notice after the insured's failure to pay.
With this additional explanation, appellee's motions for rehearing are DENIED.
SHIVERS and BARFIELD, JJ., concur.
NOTES
[1] Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla. 1977) (in summary judgment, facts must be construed against movant); Hartnett v. Southern Insurance Co., 181 So.2d 524 (Fla. 1965) (insurance policy provisions must be construed against insurance company).
[2] The policy provides, with respect to financed vehicles, that, should coverage of the creditor's interest in the vehicle terminate, then "the date of termination of the creditor's interest will be at least 10 days after the date we mail the termination notice." The record does not reveal that any such notice was ever sent to Barnett Bank.
[3] The Florida Insurance Code includes chapters 624, 626 and 627 in the Florida Statutes, among others. § 624.01, Fla. Stat. (1983).
[4] For example, the policy provision in Service Fire Insurance Co. v. Markey, 83 So.2d at 856, simply stated that "mailing of notice ... shall be sufficient proof of notice."
[5] Both of the Third District decisions in Woodcock and Difalco involved § 627.728(5), Florida Statutes (1977), which provided that "proof of mailing of notice of cancellation, of intention not to renew, or of reasons for cancellation to the named insured at the address shown in the policy shall be sufficient proof of notice."