732 So.2d 380 (1999)
Cindi CUMMINS, Appellant,
v.
ALLSTATE INDEMNITY COMPANY, a corporation, Appellee.
No. 97-3349.
District Court of Appeal of Florida, Fourth District.
March 10, 1999.
Rehearing Denied June 9, 1999.
Jene P. Williams of the Law Office of Jeffrey M. Liggio, P.A., West Palm Beach, for appellant.
Richard A. Sherman and Rosemary B. Wilder of the Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, and John F. Colowich, of the Law Office of John F. Colowich, Vero Beach, for appellee.
PER CURIAM.
Cindi Cummins appeals a summary judgment in favor of Allstate Indemnity Company (Allstate). The trial court ruled that the automobile insurance policy appellant purchased with Allstate was no longer in effect at the time her automobile was damaged due to nonpayment of the renewal premium. For reasons stated below, we reverse and remand for further proceedings.
Appellant purchased a motor vehicle insurance policy with Allstate. On August 14, 1995, four weeks prior to the policy's expiration, Allstate sent appellant a policy renewal package. Included in the package was a Florida Automobile Insurance Identification Card (Proof of Insurance) with a policy effective date of September 16, 1995. Also included was information on the amount of the premium, a statement that coverage was conditional on the premium being timely paid, and notification in several places that Allstate would send a separate bill. Appellant claimed that she never received a bill.
On October 2, 1995, appellant's car was badly damaged by fire. Appellant notified Allstate and filed a claim for property damage. Allstate denied coverage, informing appellant that her policy was "canceled" on September 16, 1995 because she failed to pay the premium. Appellant filed suit against Allstate for breach of contract. Both parties moved for summary judgment.
At the hearing on the summary judgment motions, Allstate submitted a computer printout of the renewal offer sent to appellant. It said:

*381 This is a renewal offer only. Insurance described in this document will go into effect only if your premium payment is received by us when due. A bill will be mailed to you separately.
Allstate also presented its quality control manager's affidavit, in which he stated that an Allstate computer record indicated that the billing notice was mailed to appellant on August 25, 1995 in the regular course of business. In her affidavit, appellant denied that she ever received the bill.
The trial court denied appellant's motion for summary judgment, finding that there were material issues of fact concerning whether the bill was mailed to her. However, the court granted Allstate's motion for summary judgment on the issue of coverage, finding that the undisputed facts showed that appellant received the policy renewal notice but failed to timely pay her premium and, thus, caused her policy to lapse. The court further ruled that Allstate had no statutory or other legal duty to send appellant any further notices prior to nonrenewal of the policy.
Appellant argues that Allstate is estopped from asserting that the policy lapsed for nonpayment of the premium because Allstate failed to provide her with sufficient notice that the premium was due. Although appellant acknowledges that she received Allstate's offer of renewal, which included the amount of the premium and a statement that coverage was conditional on timely payment of the premium, she explains that the renewal package also contained several statements specifically advising her that a separate bill for the premium would be mailed to her later. She was instructed to "watch the mail for your bill; it will arrive soon." Additionally, she received a proof of insurance card with an effective date of September 16, 1995, which she was instructed to keep in her vehicle at all times. Appellant contends that Allstate's conduct led her to believe that her policy was renewed and that there was nothing else for her to do but await receipt of the bill for the premium. Because the fire damage occurred before she received the bill that she was told would be forthcoming, Allstate should be estopped from denying coverage.
Appellant relies on Hepler v. Atlas Mut. Ins. Co., 501 So.2d 681 (Fla. 1st DCA 1987), to support her theory of estoppel. In that case, Ms. Hepler obtained a motor vehicle insurance policy from Atlas. She paid the entire premium for six months of coverage in advance. The effective period of the policy was from November 1, 1983 to May 1, 1984. The policy provided that the insurer had "the right not to renew or continue it [the policy] only at each anniversary of its original effective date," which the parties agreed was November 1, 1984. Atlas did not send any subsequent notices of premium due. Ms. Hepler's vehicle was involved in an automobile accident on May 23, 1984. When she notified Atlas and filed a claim for property damage and PIP benefits, Atlas advised her that her policy coverage had lapsed on May 1 for nonpayment of the renewal premium due for the six-month period between May 1 and November 1, 1984. Consequently, Atlas denied her claim. Hepler brought an action for a declaratory judgment that her automobile policy had not lapsed for nonpayment of premiums. The First District Court of Appeal reversed the trial court's summary judgment for Atlas. It held that unless an automobile insurer has complied with the notice and explanation requirements of section 627.728, Florida Statutes, it cannot terminate a motor vehicle policy for nonpayment of a premium. Therefore, Atlas' admitted failure to notify Hepler of the amount of the renewal premium precluded summary judgment for Atlas. Hepler explained that the statutory notice provisions contemplate that with regard to policy renewals, the insurer will notify the insured sufficiently in advance of the amount of the renewal premium owed, so as to give the insured an opportunity to make payment *382 without any lapse or interruption in coverage. Hepler, 501 So.2d at 686.
Although Hepler is distinguishable from this case in that it involved nonrenewal of a policy where the insurer completely failed to contact or advise the insured that her policy was up for renewal, the strong public policy considerations underlying the comprehensive statutory scheme governing cancellation or nonrenewal of insurance policies apply here. The Hepler court stated:
The statutes likewise manifest a strong public-policy interest in having motor vehicle insurance made readily available to owners and operators of automobiles at the lowest reasonable cost, without interruption, lapse, or termination of coverage due to unwarranted cancellation or nonrenewal by the insurer, or because of the insured's inadvertent failure, for lack of knowledge that the coverage is about to be terminated, to take the actions necessary to continue the policy in force.
Id. at 684.
The specific issue before us is not whether Allstate failed to give appellant the required statutory notice of the premium due, including the amount, but whether Allstate's assurances in the notice that a bill would later be mailed to the insured created an additional duty for Allstate to follow up with a bill. Did Allstate's conduct give rise to a requirement that Allstate send appellant a separate statement for payment before allowing the policy to expire for nonpayment of the renewal premium?
Appellant argues that Allstate is not entitled to a summary judgment because an issue of fact remains as to whether the "notice of renewal" was adequate in light of the ambiguous and contradictory instructions contained therein. When appellant received the renewal notice, she was given conflicting instructions. On the one hand, she was notified of the premium and when it was due. On the other hand, she was told a bill would be mailed separately. Contradictions or ambiguities in an insurer's request for payment must be resolved against the insurer. See, e.g., Pike v. National Fidelity Life Ins. Co., 377 So.2d 973 (Fla. 3d DCA 1979).
Irrespective of Allstate's purported compliance with the statute, appellant contends that Allstate failed to comply with its own self-imposed notice requirement to send a separate bill. Its repeated instructions in the renewal offer suggesting that she should wait for a separate bill before paying the premium led her to believe that she could safely rely on continuous coverage until she received the bill. In view of Allstate's actions, she believes that she cannot be deemed to have failed to discharge any obligation under the policy to pay the premium.
Allstate argues that appellant is impermissibly attempting to create coverage by estoppel. Generally, equitable estoppel may be used to prevent a forfeiture of insurance coverage but not to create coverage where none exists. See AIU Ins. Co. v. Block Marina Inv., Inc., 544 So.2d 998 (Fla.1989); Country Manors Ass'n. v. Master Antenna Sys., Inc., 534 So.2d 1187 (Fla. 4th DCA 1988); Six L's Packing Co. v. Florida Farm Bureau Mut. Ins. Co., 268 So.2d 560 (Fla. 4th DCA 1972). In response, appellant cites Crown Life Insurance Co. v. McBride, 517 So.2d 660, 662 (Fla.1987), for the proposition that "the form of equitable estoppel known as promissory estoppel may be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice." Even so, "[a]n estoppel can only be invoked against an insurer when its conduct has been such as to induce actions [or forbearance] in reliance upon it." See Allstate Ins. Co. v. Pierce, 597 So.2d 388, 389 (Fla. 5th DCA 1992).
Whether detrimental reliance can be established in this case so as to invoke the theory of promissory estoppel involves a resolution of factual issues. Summary judgment may not be used as a substitute *383 for trial. If the affidavits and other evidence raise any doubt as to any issue of material fact then a summary judgment may not be entered. Unijax, Inc. v. Factory Ins. Ass'n, 328 So.2d 448 (Fla. 1st DCA 1976).
Because we find that genuine issues as to material facts remain in dispute, we reverse the summary judgment entered in favor of Allstate and remand this cause for further proceedings.
REVERSED AND REMANDED.
POLEN, TAYLOR, JJ., and FRUSCIANTE, JOHN A., Associate Judge, concur.